UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:12-CV-804-BR

| KAMELIA SHAW, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | <u>ORDER</u> |
| NELSON G. HARRIS; HARRIS & HILTON, P.A. and All Successors in Interest of and for Harris & Hilton, P.A.; PARKWAY UNIT HOMEOWNERS ASSOCIATION and All Successors in Interest of and for Parkway Unit Owners Association; TALIS MANAGEMENT and All Successors in Interest of and for Talis Management; OMEGA ASSOCIATION MANAGEMENT and All Successors in Interest of and for Omega Association Management; STEPHEN P. STEWART; ANTHONY E. FLANAGAN; CARA B. MCNEILL (Clerk of Superior Court); STATE OF NORTH CAROLINA; and ALL OTHER DEFENDANTS WHOSE IDENTITIES ARE UNKNOWN, | ) | |
| Defendants. | ) | |

This matter is before the court on (1) the 4 March 2013 motion to dismiss (DE # 14) filed by defendants Cara B. McNeill ("McNeill") and the State of North Carolina; (2) the 5 April 2013 motion to dismiss or, in the alternative, motion for a more definite statement (DE # 20) filed by defendant Omega Association Management; and (3) the 10 May 2013 motion for summary judgment (DE # 26) filed by defendants Nelson G. Harris; Harris & Hilton, P.A.; Parkway Unit Owners Association, Inc.; Talis Management Group, Inc.; Stephen P. Stewart; and Anthony E. Flanagan. Unless referred to individually, all defendants will be referred to collectively as "defendants." For the sake of convenience, McNeill and the State of North Carolina may also be

referred to as "the State defendants." All other defendants may be collectively referred to as "the non-State defendants."

On 2 April 2013, plaintiff Kamelia Shaw ("plaintiff") filed a response (DE # 17) to the 4 March 2013 motion to dismiss. She did not respond to the other motions. The motions are ripe for disposition.

## I. BACKGROUND

Plaintiff was the owner of residential property located at 204 Heathridge Lane in Cary, North Carolina ("the property"). (Compl., DE # 1, ¶¶ 48-49.) In plaintiff's words, "[t]his case has its nexus over a disputed past due homeowners association fee of $355.00." (Id. ¶ 45 (emphasis omitted).) As a result of that dispute, plaintiff alleges that a claim of lien was filed against the property and that a "deed theft scam" by defendants resulted in the issuance of a foreclosure order by McNeill, an Assistant Clerk of Wake County Superior Court, on 29 July 2010. (Id. ¶ 59; see also id. ¶¶ 58, 64.) The property was eventually sold at public auction. (Id. ¶ 66.)

Plaintiff filed her *pro se* complaint in this action on 14 December 2012. She contends that this court has subject matter jurisdiction on the basis of both diversity and federal question jurisdiction. (Id. ¶¶ 14-15.) She asserts a claim for violation of her due process rights under 42 U.S.C. § 1983, a claim for violation of the Fair Debt Collection Practices Act ("FDCPA"), and various state law claims. (Id. ¶ 11.) Among other things, she alleges that defendants did not provide her with proper notice of their intent to deprive her of a substantial property right, that defendants submitted a defective affidavit of service to the Wake County Clerk of Court, and that defendants provided a fraudulent document to the Clerk of Court that purported to contain a

2

power of sale clause. (See, e.g., id. ¶¶ 4-6, 57, 62-63, 114.) Plaintiff contends that defendants did not in fact possess a deed of trust or other instrument with a power of sale clause and therefore could not foreclose pursuant to N.C. Gen. Stat. § 45-21. (Id. ¶¶ 61, 81.) Among other relief, plaintiff seeks $480,000 in compensatory damages and $1,000,000 in punitive damages for each cause of action in the complaint, interest, and a warranty deed for the property. (Id. at 45, Prayer for Relief.)

## II. DISCUSSION

A.     Rooker-Feldman Doctrine

Defendants maintain that the court lacks subject matter jurisdiction over all of plaintiff's claims under the Rooker-Feldman doctrine. Because plaintiff asserts that this court has subject matter jurisdiction, she must prove that subject matter jurisdiction exists. See, e.g., Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 104 (1998); Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999); Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). The court is not limited to the jurisdictional allegations in the complaint, but may properly consider evidence submitted by the parties to determine whether subject matter jurisdiction exists. See, e.g., Evans, 166 F.3d at 647; Richmond, 945 F.2d at 768; Saval v. BL Ltd., 710 F.2d 1027, 1029 n.2 (4th Cir. 1983) (per curiam). "The moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Richmond, 945 F.2d at 768; see also Evans, 166 F.3d at 647.

The Rooker-Feldman doctrine[1] bars claims "brought by state-court losers complaining of

---

[1] The doctrine takes its name from two Supreme Court cases, Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923), and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983).

3

injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobile Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005); see also Washington v. Wilmore, 407 F.3d 274, 279 (4th Cir. 2005). The doctrine encompasses "not only review of adjudications of the state's highest court, but also the decisions of its lower courts." Brown & Root, Inc. v. Breckenridge, 211 F.3d 194, 199 (4th Cir. 2000) (citation and internal quotation marks omitted). Rooker-Feldman "reinforces the important principle that review of state court decisions must be made to the state appellate courts, and eventually to the Supreme Court, not by federal district courts or courts of appeal."[2] Id. (citation and internal quotation marks omitted). "The doctrine [also] preserves federalism by ensuring respect for the finality of state court judgments . . . ." Washington, 407 F.3d at 279.

The Rooker-Feldman bar extends not only to issues actually presented to and decided by

---

[2] Thus, the Rooker-Feldman doctrine is particularly relevant when there is a means of appeal provided by the state. See Washington, 407 F.3d at 280 (finding Rooker-Feldman did not bar a claim in part because there was no mechanism by which the plaintiff could obtain state court resolution). Here, Chapter 45 of the North Carolina General Statutes provides for an appeal of an order allowing a foreclosure sale. See N.C. Gen. Stat. § 45-21.16(d1). The appeal must be taken within ten days of the order allowing foreclosure. Id.
   The court notes that although plaintiff did not appeal the 29 July 2010 foreclosure order (DE # 26-16), she has attempted to challenge the state court foreclosure proceedings. On 29 November 2010, she filed a motion to set aside the foreclosure. (DE # 26-23.) On 4 January 2011, she filed an amended motion to set aside the foreclosure. (DE # 26-25.) The amended motion was denied by the Wake County Clerk of Court on 20 January 2011. (DE # 26-26.) Plaintiff appealed to the Wake County Superior Court and subsequently appealed to the North Carolina Court of Appeals. (DE ## 26-27, 26-29.) On 6 August 2013, the North Carolina Court of Appeals affirmed the trial court's order upholding the Wake County Clerk of Court's decision to deny plaintiff's amended motion to set aside the order of foreclosure. In re Foreclosure of a Lien by Parkway Unit Owners Ass'n, Inc., No. COA12-1380, 2013 WL 3990893 (N.C. Ct. App. Aug. 6, 2013). In part, the North Carolina Court of Appeals found that

> Ms. Shaw has failed to acknowledge that N.C. Gen. Stat. § 47F-3-116(a) explicitly authorizes a homeowners' association to foreclose on a lien arising from unpaid assessment amounts. Simply put, Ms. Shaw is mistaken in asserting that a homeowner's association is only entitled to foreclose on a lien arising from unpaid assessments in the event that it possesses an instrument that contains a power of sale provision.

Id. at *7. The appellate court also determined that plaintiff was not entitled to relief on her argument that she was not given the statutorily required foreclosure notice because she failed to preserve the issue for review. Id. at *8.

4

a state court, but also to issues that are "'inextricably intertwined'" with questions ruled on by a state court. Id. (quoting D.C. Ct. of Appeals v. Feldman, 460 U.S. 462, 486 (1983)); see also Plyler v. Moore, 129 F.3d 728, 731 (4th Cir. 1997). A federal claim is inextricably intertwined with a state court decision where, "in order to grant the federal plaintiff the relief sought, the federal court must determine that the [state] court judgment was erroneously entered or must take action that would render the judgment ineffectual." Jordahl v. Democratic Party of Va., 122 F.3d 192, 202 (4th Cir. 1997) (alteration in original) (citation and internal quotation marks omitted); see also Davani v. Va. Dep't of Transp., 434 F.3d 712, 719 (4th Cir. 2006) ("[I]f the state-court loser seeks redress in the federal district court for the injury caused by the state-court decision, his federal claim is, by definition, 'inextricably intertwined' with the state-court decision, and is therefore outside of the jurisdiction of the federal district court."); Brown & Root, Inc., 211 F.3d at 198 ("The 'inextricably intertwined' prong of the [Rooker-Feldman] doctrine bars a claim that was not actually decided by the state court but where success on the federal claim depends upon a determination that the state court wrongly decided the issues before it." (citation and internal quotation marks omitted)). Rooker-Feldman, therefore, applies when the federal action "essentially amounts to nothing more than an attempt to seek review of [the state court's] decision by a lower federal court." Plyler, 129 F.3d at 733; see also Brown & Root, Inc., 211 F.3d at 201.[3]

Here, the court finds that it lacks jurisdiction over plaintiff's federal claims under the

---

[3] The court notes that the existence of diversity jurisdiction does not defeat the bar of Rooker-Feldman. See, e.g., Segler v. Felfam Ltd. P'ship, 324 F. App'x 742, 743 (10th Cir. 2009) (unpublished) ("Rooker-Feldman . . . bars suits even where diversity jurisdiction otherwise exists." (citing Noel v. Hall, 341 F.3d 1148, 1155 (9th Cir. 2003))); Ballyhighlands, Ltd. v. Bruns, 182 F.3d 898 (Table), No. 98-9373, 1999 WL 377098, at *2 (2d Cir. May 28, 1999) (rejecting argument that Rooker-Feldman did not apply because the suit was a diversity action).

5

Rooker-Feldman doctrine. It is clear that plaintiff is a state court loser and that the state court foreclosure judgment was rendered before the district court proceedings commenced. Furthermore, in her prayer for relief, plaintiff asks in part that she "be provided with a warranty deed for the home located at 204 Heathridge Lane, Cary, North Carolina . . . ." (Compl., DE # 1, at 45 ¶ c (emphasis in original).) Thus, plaintiff is directly challenging the state court decision concerning ownership of the real property at issue.

In addition, plaintiff argues that defendants had no right to foreclose on the property and that she did not receive proper notice of the foreclosure proceeding. (See, e.g., Compl., DE # 1, ¶¶ 4-6, 61-62, 76, 78, 81; Pl.'s Resp. Mot. Dismiss, DE # 17, at 4, 6-8.) However, these precise issues were decided by McNeill, an Assistant Clerk of Wake County Superior Court, subsequent to a foreclosure hearing conducted pursuant to North Carolina law. (DE # 26-16.) See N.C. Gen. Stat. § 45-21.16(d); In re Foreclosure of Helms, 284 S.E.2d 553, 555 (N.C. Ct. App. 1981) ("According to N.C. Gen. Stat. § 45-21.16(d), there are only four issues before the clerk at a foreclosure hearing: [1] the existence of a valid debt of which the party seeking to foreclose is the holder, [2] the existence of default, [3] the trustee's right to foreclose, and [4] the sufficiency of notice to the record owners of the hearing."), disc. review denied, 291 S.E.2d 149 (N.C. 1982). Plaintiff also maintains that defendants committed fraudulent actions before the foreclosure was ordered, but her opportunity to show that came in the state court action. See Radisi v. HSBC Bank USA, Nat'l Ass'n, No. 5:11CV125-RLV, 2012 WL 2155052, at *4 (W.D.N.C. June 13, 2012) (citing Dillard v. Bank of N.Y., 476 F. App'x 690, 691-92 (10th Cir. 2012) (unpublished) (dismissing a claim of improper documents and deceptive representations in a foreclosure action under the Rooker-Feldman doctrine)), aff'd, 479 F. App'x 468 (4th Cir.

6

2012) (per curiam) (unpublished).

Moreover, to the extent that plaintiff contends that she did not specifically raise her FDCPA claim or her due process claim under 42 U.S.C. § 1983 in the state court proceedings, this fact does not preclude the application of the Rooker-Feldman doctrine because plaintiff's federal claims are inextricably intertwined with the state court foreclosure action. If the court accepted plaintiff's arguments that the state court decision was the result of conspiracy, trickery, and bad faith on the part of defendants, it would effectively declare the state court judgment fraudulently procured and thus void. See, e.g., Smalley v. Shapiro & Burson, LLP, No. 12-1266, 2013 WL 1613219, at *5 (4th Cir. Apr. 16, 2013) (holding that the Rooker-Feldman doctrine applied because plaintiff's claims under the FDCPA and other statutes were inextricably intertwined with the foreclosure proceeding in state court); In re Knapper, 407 F.3d 573, 579-81 (3d Cir. 2005) (finding Rooker-Feldman precluded due process attack on state foreclosure judgments because federal relief would rely on a finding that the state court judgments were improperly obtained); Harper v. Chase Manhattan Bank, 138 F. App'x 130, 133 (11th Cir. 2005) (holding that the Rooker-Feldman doctrine applied because plaintiff's claims under the FDCPA and other statutes were inextricably intertwined with the foreclosure proceeding in state court); Brumby v. Deutsche Bank Nat'l Trust Co., No. 1:09CV144, 2010 WL 617368, at *4 (M.D.N.C. Feb. 17, 2010) (report and recommendation) (collecting cases and holding that plaintiff's FDCPA claim was barred by Rooker-Feldman because the remedies sought by plaintiff would have required the court to reject the judicial findings made in state court foreclosure action), adopted, 2010 WL 3219353 (M.D.N.C. Aug. 13, 2010); Drew v. Chase Manhattan Bank, N.A., No. 95 Civ. 3133(JGK), 1998 WL 430549, at *6 (S.D.N.Y. July 30, 1998) (rejecting plaintiff's §

7

1983 claims that defendants made false representations in court papers as "merely a thinly-veiled effort to invalidate [a] State Court foreclosure judgment, in contravention of Rooker-Feldman" (alteration in original) (citation and internal quotation marks omitted)).

In summary, plaintiff's federal claims are an attempt to revisit a state court foreclosure judgment. Ruling in plaintiff's favor on these claims would require this court to substantively review and reject the order of the state court in the foreclosure proceedings, which is prohibited by Rooker-Feldman. See Adolphe v. Option One Mortg. Corp., No. 3:11-cv-418-RJC, 2012 WL 5873308, at *4 (W.D.N.C. Nov. 20, 2012); Watkins v. Clerk of Superior Ct. for Gaston Cnty., Civil Action No. 3:12-CV-033-RJC-DCK, 2012 WL 5872751, at *5-6 (W.D.N.C. July 10, 2012) (report and recommendation), adopted, 2012 WL 5872750, at *4-6 (W.D.N.C. Nov. 20, 2012). As stated above, plaintiff has the burden of proving that subject matter jurisdiction exists, and her response to the 4 March 2013 motion to dismiss fails to articulate a persuasive argument refuting defendants' assertion that subject matter jurisdiction is lacking. "Simply put, this court lacks subject-matter jurisdiction to sit in direct review of North Carolina's trial courts, which includes the decision of a Clerk of Court in a state foreclosure action." Pitts v. U.S. Hous. & Urban Dev., No. 5:12-CV-72-D, 2013 WL 214693, at *3 (E.D.N.C. Jan. 18, 2013) (citing Brown & Root, Inc., 211 F.3d at 199; Jordahl, 122 F.3d at 202-03).

The court has determined that plaintiff's FDCPA and § 1983 claims must be dismissed. Plaintiff has also asserted numerous state law claims, including conversion; trespass to chattel; unjust enrichment; statutory and common law fraud; misrepresentation; defamation; intentional and negligent interference with contractual relationships; intentional and negligent interference with economic advantage; intentional and negligent interference with prospective business

8

relations; intentional infliction of emotional distress; prima facie tort; conspiracy; breach of public trust; breach of duty of good faith; and common law theft.

Defendants have failed to specifically address plaintiff's state law claims in the motions at issue. Nevertheless, as was discussed supra, to the extent that plaintiff's state law claims challenge the state court foreclosure judgment or are "inextricably intertwined" therewith, the Rooker-Feldman doctrine bars those claims. See, e.g., Jackson v. Farmers Ins. Grp./Fire Ins. Exch., 391 F. App'x 854, 857 (11th Cir. 2010) (per curiam) (unpublished) (plaintiff's state law claims against her insurer, including claims for bad faith, negligent misrepresentation, and fraud, were barred by Rooker-Feldman because they were inextricably intertwined with the state court judgment); Kamilewicz v. Bank of Boston Corp., 92 F.3d 506, 509-12 (7th Cir. 1996) (applying Rooker-Feldman to claims of common law fraud, negligent misrepresentation, attorney malpractice, breach of fiduciary duty, and conversion); Lumpkins v. Bank of America, Civil Action No. 12-9, 2012 WL 6115107, at *4 (E.D. La. Dec. 10, 2012) (plaintiff's state law claims for fraud, wrongful foreclosure, breach of contract, and unjust enrichment were barred by Rooker-Feldman because they were inextricably intertwined with the state court foreclosure judgment).

Here, it appears that Rooker-Feldman applies to almost all of plaintiff's state law claims. These claims relate in some manner to plaintiff's allegations regarding defendants' filing of improper documents, their deceptive representations to the Wake County Clerk of Court and the Register of Deeds, and their wrongful possession of plaintiff's property. In order to succeed on these claims, plaintiff would need to establish that the judgment of the state court was erroneous, particularly with regard to the issues of whether the trustee had the right to foreclose and

9

whether plaintiff was provided with sufficient notice. Furthermore, the action allegedly taken by defendants is merely the underlying conduct challenged in attacking the foreclosure judgment and sale; it is not unrelated conduct supporting an "independent" claim. Exxon Mobile Corp., 544 U.S. at 293 (citation and internal quotation marks omitted). In other words, "but for the state court determination[], the federal plaintiff[] would have had no complaint" with respect to these state law claims.[4] Remer v. Burlington Area Sch. Dist., 205 F.3d 990, 998 (7th Cir. 2000). As a result, they are barred by the Rooker-Feldman doctrine.

Construing the state law claims liberally, the court concludes that the only claim that is not barred by the Rooker-Feldman doctrine is plaintiff's claim for defamation. Plaintiff, who maintains that she is a duly licensed attorney, alleges in part that defendant Nelson G. Harris sent an email to McNeill and another individual stating that plaintiff was engaging in the unlicensed practice of law. (Compl., DE # 1, ¶ 133.) Among other things, she also asserts that defendants "inflated" the amount of the alleged underlying debt in numerous court filings to make her appear to be a "deadbeat" in the community.[5] (Id. ¶ 139 (internal quotation marks omitted); see also id. ¶ 138.) The defamation claim is not inextricably intertwined with the state court proceeding, as it would not necessarily require this court to determine that the state court

---

[4] For example, plaintiff alleges that defendants intentionally interfered with her actual and prospective contractual relationships. She specifically claims that at the time of defendants' interference, she "was listed with a licensed real estate broker to market Plaintiff's property for sale or rent." (Compl., DE #1, ¶ 149.) She further states that "Plaintiff's listing contract was cancelled due to Defendant's [sic] unlawful and wrongful claim to ownership." (Id. ¶ 150.) However, it is clear that plaintiff's injury with respect to this claim stems from the foreclosure itself and not from the actions of defendants. If plaintiff had been able to avoid the state court's foreclosure judgment, her listing contract would presumably have remained in effect, and she would have had no claim against defendants for interference with her contractual relationships. Thus, this is not an independent claim over which the court can assert jurisdiction.

[5] The court emphasizes that in a foreclosure hearing, one of the findings that the clerk is required to make relates to the existence of a valid debt and not its amount. See N.C. Gen. Stat. § 45-21.16(d); In re Foreclosure of Helms, 284 S.E.2d at 555.

10

decision was wrong. Accordingly, the court will not dismiss the defamation claim for lack of subject matter jurisdiction under Rooker- Feldman.[6]

B.      The State Defendants

McNeill and the State of North Carolina also move for dismissal of this action on other grounds. To the extent that plaintiff seeks damages directly from the State, the court finds that her claims are barred by the Eleventh Amendment. See Edelman v. Jordan, 415 U.S. 651, 662-63 (1974). Moreover, the Eleventh Amendment generally bars suits directly against states regardless of the nature of the relief sought. Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 58 (1996). As a result, the State of North Carolina will be dismissed from this action.[7]

In addition, a suit brought against a state official acting in his or her official capacity constitutes a suit against the state and, therefore, is also barred by the Eleventh Amendment. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989). In determining whether McNeill is entitled to Eleventh Amendment immunity in her official capacity as Assistant Clerk of Wake County Superior Court, it is necessary to "'establish whether [North Carolina's] treasury will be affected by the law suit. If the answer is yes, [McNeill] is immune under the Eleventh

---

[6] The court notes that it cannot decline to exercise jurisdiction over the state law defamation claim that is not barred by Rooker-Feldman where, as here, plaintiff has sufficiently alleged that diversity exists as an independent basis for jurisdiction. Compare 28 U.S.C. § 1332 with 28 U.S.C. § 1367(c); see BNSF Ry. Co. v. O'Dea, 572 F.3d 785, 793 n.2 (9th Cir. 2009) (Fisher, J., concurring) ("[T]he diversity statute, unlike the supplemental jurisdiction statute, does not afford district courts the discretion to decline jurisdiction over state law claims.").

[7] The Fourth Circuit has not ruled on whether dismissing a suit on Eleventh Amendment immunity grounds is a dismissal for failure to state a claim under Rule 12(b)(6) or a dismissal for lack of subject matter jurisdiction under Rule 12(b)(1). See Andrews v. Daw, 201 F.3d 521, 524 n.2 (4th Cir. 2000). However, courts generally consider motions alleging Eleventh Amendment immunity under Rule 12(b)(1). See, e.g., Blackburn v. Trs. of Guilford Technical Cmty. Coll., 822 F. Supp. 2d 539, 542 n.2 (M.D.N.C. 2011); Trantham v. Henry Cnty. Sherriff's Office, No. 4:10CV00058, 2011 WL 863498, at *3 (W.D. Va. Mar. 10, 2011) (noting the "recent trend among the district courts within the Fourth Circuit to consider sovereign immunity under Rule 12(b)(1)"), aff'd, 435 F. App'x 230 (4th Cir. 2011) (per curiam) (unpublished). Therefore, the court has considered this issue pursuant to Rule 12(b)(1).

11

Amendment.'" Nivens v. Gilchrist, 444 F.3d 237, 249 (4th Cir. 2006) (first alteration in original) (quoting Harter v. Vernon, 101 F.3d 334, 340 (4th Cir. 1996)). Here, the State of North Carolina's treasury would be affected by the lawsuit because the State must pay "a final judgment awarded in a court of competent jurisdiction against a State employee . . . ." N.C. Gen. Stat. § 143-300.6(a)(i). Thus, McNeill is immune from suit in her official capacity under the Eleventh Amendment.

Moreover, to the extent that plaintiff has brought claims against McNeill in her personal capacity, those claims cannot survive. McNeill is entitled in her individual capacity to absolute judicial immunity for the judicial actions she took in connection with plaintiff's foreclosure action over which she properly exercised jurisdiction.[8] See N.C. Gen. Stat. § 7A-102(b) (an assistant clerk may exercise all of the duties and functions of the office of clerk of superior court); id. § 45-21.16(d1) (providing for appeal of clerk's order allowing foreclosure to superior court); Jarvis v. Chasanow, 448 F. App'x 406, 406 (4th Cir. 2011) (per curiam) (unpublished) (citing Briscoe v. LaHue, 460 U.S. 325, 335 (1983)); Wiley v. Buncombe Cnty., 846 F. Supp. 2d 480, 485 (W.D.N.C.), aff'd, 474 F. App'x 285 (4th Cir. 2012) (per curiam) (unpublished); Green v. North Carolina, No. 4:08-CV-135-H, 2010 WL 3743767, at *3 (E.D.N.C. Sept. 21, 2010); Vest v. Easley, 549 S.E.2d 568, 572 (N.C. Ct. App. 2001). After a careful review of the record, the court concludes that plaintiff has not presented any allegations which demonstrate that McNeill acted in the clear absence of all jurisdiction or otherwise engaged in extra-judicial

---

[8] The Fourth Circuit has enunciated policy rationales for extending absolute immunity to auxiliary court personnel, stating that the "danger that disappointed litigants, blocked by the doctrine of absolute immunity from suing the judge directly, will vent their wrath on clerks, court reporters, and other judicial adjuncts . . . warrants this extension of the doctrine." Kincaid v. Vail, 969 F.2d 594, 601 (4th Cir. 1992) (alteration in original) (citation and internal quotation marks omitted).

12

conduct that would vitiate the doctrine of judicial immunity in this case.[9] Accordingly, all claims against McNeill will be dismissed.

### III. CONCLUSION

For the foregoing reasons, the motion to dismiss (DE # 14) filed by the State defendants is GRANTED. All of plaintiff's claims against McNeill and the State of North Carolina are DISMISSED WITHOUT PREJUDICE, and these defendants are DISMISSED from this action. The motion to dismiss (DE # 20) filed by Omega Association Management and the motion for summary judgment (DE # 26) filed by Nelson G. Harris; Harris & Hilton, P.A.; Parkway Unit Owners Association, Inc.; Talis Management Group, Inc.; Stephen P. Stewart; and Anthony E. Flanagan are GRANTED IN PART and DENIED IN PART. All of plaintiff's claims against the non-State defendants other than the defamation claim contained in Count Seven of the complaint are DISMISSED WITHOUT PREJUDICE.[10] Given that plaintiff's defamation claim is the only claim remaining in this action, Omega Association Management's alternative motion for a more

---

[9] Plaintiff contends that McNeill lacked legal authorization to preside over the foreclosure proceeding "absent a waiver by Plaintiff via a power of sale clause in her mortgage instrument." (Pl.'s Resp. Mot. Dismiss, DE # 17, at 9.) However, as the North Carolina Court of Appeals has pointed out, plaintiff "is mistaken in asserting that a homeowner's association is only entitled to foreclose on a lien arising from unpaid assessments in the event that it possesses an instrument that contains a power of sale provision." In re Foreclosure of a Lien, 2013 WL 3990893, at *7. Because foreclosure was proper under N.C. Gen. Stat. § 47F-3-116(a), see id., plaintiff's argument that McNeill acted outside the scope of her authority is without merit.

[10] The non-State defendants have asked that plaintiff's claims be dismissed with prejudice. (See DE ## 20; 21 at 6; 26 at 2; 26-31 at 8). However, because the court has found that it lacks subject matter jurisdiction over the claims at issue, the court does not have the authority to reach the merits of the case. Therefore, the claims must be dismissed without prejudice. See Smalley, 2013 WL 1613219, at *7; Williams v. Saxon Mortg. Servs., Inc. (In re Williams), No. 11-9067, 2011 WL 4632688, at *2 (Bankr. M.D.N.C. Oct. 4, 2011) (collecting cases).

13

definite statement (DE # 20) is DENIED.

This 24 September 2013.

_____
W. Earl Britt
Senior U.S. District Judge