UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:12-CV-804-BR

| | |
|---|---|
| KAMELIA SHAW, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| NELSON G. HARRIS, *et al.*, ) | |
| ) | |
| Defendants. ) | |

This matter is before the court on (1) the 8 October 2013 motion to dismiss (DE # 37) filed by defendant Omega Association Management ("Omega"); (2) Omega's 5 February 2014 motion for summary judgment (DE # 46); and (3) Omega's 5 February 2014 motion for sanctions (DE # 50). Plaintiff did not respond to any of the motions. The matters are ripe for disposition.

## I. BACKGROUND

Plaintiff was the owner of residential property located at 204 Heathridge Lane in Cary, North Carolina ("the property"). (Compl., DE # 1, ¶¶ 48-49.) In plaintiff's words, "[t]his case has its nexus over a disputed past due homeowners association fee of $355.00." (Id. ¶ 45 (emphasis omitted).) As a result of that dispute, plaintiff alleges that a claim of lien was filed against the property and that a "deed theft scam" by defendants resulted in the issuance of a foreclosure order by Cara B. McNeill ("McNeill"), an Assistant Clerk of Wake County Superior Court, on 29 July 2010. (Id. ¶ 59; see also id. ¶¶ 58, 64.) The property was eventually sold at public auction. (Id. ¶ 66.)

Plaintiff filed her *pro se* complaint in this action on 14 December 2012. She asserted a claim for violation of her due process rights under 42 U.S.C. § 1983, a claim for violation of the

Fair Debt Collection Practices Act, and various state law claims. (Id. ¶ 11.) The complaint specifically named nine defendants: Nelson G. Harris; Harris & Hilton, P.A.; Parkway Unit Owners Association, Inc.; Talis Management Group, Inc.; Stephen P. Stewart; Anthony E. Flanagan; Omega; McNeill; and the State of North Carolina. On 24 September 2013, the court entered an order dismissing McNeill and the State of North Carolina from the case. (DE # 36.) The court also dismissed all of plaintiff's claims against the other defendants except for the defamation claim contained in Count Seven of the complaint. (Id.)

Plaintiff filed an interlocutory appeal from the court's 24 September 2013 order on 7 November 2013. (DE # 40.) Plaintiff has taken no action in this case since that date. Her interlocutory appeal was dismissed by the Fourth Circuit Court of Appeals for failure to prosecute on 8 January 2014. (DE # 44.) Plaintiff also failed to respond to any of the motions that are currently before the court.

## II. DISCUSSION

A. <u>Motion to Dismiss</u>

The court first addresses Omega's motion to dismiss. A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) "tests the sufficiency of a complaint" but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." <u>Republican Party v. Martin</u>, 980 F.2d 943, 952 (4th Cir. 1992). In order to survive a Rule 12(b)(6) motion to dismiss, the complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

2

inference that the defendant is liable for the misconduct alleged." Id. In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint." Nemet Chevrolet, Ltd. v. Consumeraffairs.com. Inc., 591 F.3d 250, 255 (4th Cir. 2009).

In this case, Omega argues in part that plaintiff's defamation claim is barred by the statute of limitations. Under North Carolina law, the statute of limitations for defamation actions is one year. N.C. Gen. Stat. § 1-54(3); Robinson v. Bladen Cnty. Sheriff Dep't, No. 7:10-CV-146-BO, 2010 WL 4054389, at *3 (E.D.N.C. Oct. 14, 2010); Gibson v. Mut. Life Ins. Co. of N.Y., 465 S.E.2d 56, 58 (N.C. Ct. App. 1996). A time limitations challenge, such as the one Omega asserts here, must be raised through an affirmative defense, and the burden of establishing the affirmative defense rests on the defendant. Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007). As a result, an affirmative defense is often not appropriate for disposition under Rule 12(b)(6). Id. (noting that a Rule 12(b)(6) challenge, "which tests the sufficiency of the complaint, generally cannot reach the merits of an affirmative defense, such as the defense that the plaintiff's claim is time-barred"); Republican Party, 980 F.2d at 952 (A motion to dismiss "tests the sufficiency of a complaint" but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."). An exception exists for the "relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint . . . ." Goodman, 494 F.3d at 464. This exception is strictly construed, requiring that all "facts necessary to the affirmative defense 'clearly appear[ ] on the face of the complaint.'" Id. (alteration and emphasis in original) (quoting Richmond, Fredericksburg & Potomac R.R. v. Forst, 4 F.3d 244, 250 (4th Cir. 1993)).

3

With respect to her remaining defamation claim, plaintiff asserts that she is "a duly licensed attorney." (Compl., DE # 1, ¶ 134.) She alleges that on 10 February 2011, defendant Nelson G. Harris ("Harris") sent an email to McNeill, an Assistant Clerk of Wake County Superior Court, and another individual, David Hall, Esq. (Id. ¶ 133.) The email stated that plaintiff "was engaging in the unlicensed practice of law." (Id.) Plaintiff maintains that this statement "is and was untrue" and that it was the "apparent intent" of Harris to "demote and bring shame to Plaintiff . . . ." (Id. ¶ 135.)

Plaintiff does not allege that Omega was involved in the sending of the offending email quoted above. Regardless, as Omega points out, plaintiff admits on the face of the complaint that the alleged defamatory statement regarding her engagement in the unauthorized practice of law was made on 10 February 2011. (Id. ¶ 133.) As a result, the statute of limitations for a defamation claim based on this statement was 10 February 2012. However, plaintiff did not file her complaint until 14 December 2012, approximately ten months after the statute of limitations had run. Accordingly, to the extent that plaintiff's defamation claim against Omega is based on the statement contained in the 10 February 2011 email, the claim is time-barred.

As part of her defamation claim, plaintiff also asserts that with regard to the state court foreclosure proceedings on her property, defendants "in numerous court filings . . . stated that [the] amount of the alleged underlying debt is in excess of $1,300.00, when the Defendants know full well the alleged underlying unsecured debt, and unliquidated debt is $355.00." (Id. ¶ 138 (emphasis omitted); see also id. ¶ 45.) She claims that defendants "inflated the amount to make Plaintiff appear to be a 'deadbeat' in the community." (Id. ¶ 139.) Plaintiff contends that her professional reputation has been harmed by the egregious acts of defendants. (Id. ¶ 140.) Other

4

than the collective reference to "defendants," Omega is not identified in plaintiff's allegations with respect to this aspect of her claim.

As plaintiff's own allegations show, the last "court filing[ ]" (id. ¶ 138) in which any defamatory statements could have been made regarding the amount of plaintiff's debt occurred on 9 September 2010 when three of the other defendants filed a "Report of Foreclosure Sale/Resale" with the Wake County Clerk of Superior Court. (Id. ¶ 66 (internal quotation marks omitted).) Again, plaintiff did not file her complaint until 14 December 2012. Therefore, to the extent that plaintiff's defamation claim against Omega is based on the filing of this report or on any prior court filings, it is barred by the one-year statute of limitations.

Furthermore, the part of plaintiff's defamation claim against Omega that is based on statements contained in court filings must also be dismissed pursuant to the doctrine of absolute privilege.

> It is now well-established that defamatory statements made in the course of a judicial proceeding are absolutely privileged and will not support a civil action for defamation, even if made with malice. In determining whether or not a statement is made in the course of a judicial proceeding, the court must decide as a matter of law whether the alleged defamatory statements are sufficiently relevant to the issues involved in a proposed or ongoing judicial proceeding.

Jones v. Coward, 666 S.E.2d 877, 879 (N.C. Ct. App. 2008) (quoting Harris v. NCNB Nat'l Bank of N.C., 355 S.E.2d 838, 841 (N.C. Ct. App. 1987)).

> While statements in pleadings and other papers filed in a judicial proceeding are not privileged if they are not relevant or pertinent to the subject matter of the action, the question of relevancy or pertinency is a question of law for the courts, and the matter to which the privilege does not extend must be so palpably irrelevant to the subject matter of the controversy that no reasonable man can doubt its irrelevancy or impropriety. If it is so related to the subject matter of the controversy that it may become the subject of inquiry in the course of the trial, the rule of absolute privilege is controlling.

Id. (quoting Scott v. Statesville Plywood & Veneer Co., Inc., 81 S.E.2d 146, 149 (N.C. 1954)); see also Rickenbacker v. Coffey, 405 S.E.2d 585, 587 (N.C. Ct. App.) ("If pertinent or relevant, statements in pleadings and other papers filed with the court are absolutely privileged, and the question of relevancy is a question of law for the court."), disc. review denied, 409 S.E.2d 600 (N.C. 1991). The phrase "'judicial proceeding' has been defined broadly, encompassing more than just trials in civil actions or criminal prosecutions." Jones, 666 S.E.2d at 879 (citation and internal quotation marks omitted). Indeed, the term includes "every proceeding of a judicial nature before a competent court or before a tribunal or officer clothed with judicial or quasi-judicial powers." Rickenbacker, 405 S.E.2d at 587 (citation, emphasis, and internal quotation marks omitted).

As discussed heretofore, plaintiff accuses the defendants of inflating the amount of her purported liability to her homeowners' association in numerous court filings submitted in the state court foreclosure proceedings on her property. (Compl., DE # 1, ¶ 138.) The amount of the debt owed by plaintiff is certainly relevant and pertinent to the subject matter of the foreclosure proceedings, and it necessarily would have been the subject of inquiry during the course of those proceedings. Therefore, the statements contained in the state court foreclosure pleadings regarding the alleged amount of plaintiff's debt cannot serve as the basis for a defamation claim against Omega. See Scott, 81 S.E.2d at 149-50 (sustaining demurrer and dismissing action based on absolute privilege where plaintiff alleged that libelous statements were made in complaint and other papers filed with court, and it affirmatively appeared on the face of the complaint that the statements were relevant to the action). Accordingly, Omega's motion to dismiss will be allowed. Because the court is granting the motion to dismiss, Omega's motion for summary

judgment will be denied as moot.

There are now six defendants remaining in this lawsuit: Nelson G. Harris; Harris & Hilton, P.A.; Parkway Unit Owners Association, Inc.; Talis Management Group, Inc.; Stephen P. Stewart; and Anthony E. Flanagan. As the court has previously stated, plaintiff, who is proceeding *pro se*, has taken no action in this case since 7 November 2013, when she filed an interlocutory appeal from this court's 24 September 2013 order. (DE ## 36, 40.) Her interlocutory appeal was dismissed by the Fourth Circuit Court of Appeals for failure to prosecute on 8 January 2014. (DE # 44.) In addition, plaintiff failed to oppose any of Omega's instant motions, including the motion for sanctions. See Section II.B., infra. Sanctions are a very serious matter, and Omega's motion should have merited a thorough response from plaintiff. As a result, it appears that plaintiff has lost interest in prosecuting or defending this case. Furthermore, based on the instant ruling on Omega's motion to dismiss, the court has serious concerns as to whether this case should be submitted to a jury. Because of these factors, the court will allow an extension of time for the remaining defendants to file a dispositive motion in this action. The remaining defendants shall have thirty days from the date of this order to file a dispositive motion.[1] By proceeding in this fashion, the court is exercising its inherent power to control the disposition of the cases on its docket in an efficient and effective manner.

B.    Motion for Sanctions

On 5 February 2014, Omega filed a motion for sanctions against plaintiff pursuant to Rule 11 of the Federal Rules of Civil Procedure. (DE # 50.) If Rule 11 sanctions are initiated by

---

[1] If the remaining defendants choose this course of action, the court presumes that because they share a commonality of interests and are represented by the same attorney, they will file a single, joint dispositive motion for the sake of brevity and out of consideration for the resources of the court.

motion of a party, the motion must first be served upon the offending party and may not be filed with the court "if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service . . . ." Fed. R. Civ. P. 11(c)(2). This provision ensures that a party has adequate notice of the motion and sufficient time to correct or withdraw the contested assertion or denial.

The court may sanction any attorney or party who presents a complaint to the court that violates the requirements of Rule 11(b). See Fed. R. Civ. P. 11(c). Under Rule 11(b), an attorney or unrepresented party who signs and files a complaint certifies that all of the factual contentions in the complaint "have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3). In determining whether a signer has violated Rule 11, the court applies an objective standard of reasonableness. In re Weiss, 111 F.3d 1159, 1170 (4th Cir. 1997). "*Pro se* pleadings are[, however,] granted a degree of indulgence not extended to lawyers when determining whether to impose monetary sanctions pursuant to Rule 11." Laremont-Lopez v. Se. Tidewater Opportunity Ctr., 968 F. Supp. 1075, 1078 (E.D. Va. 1997) (citation omitted).

Here, although plaintiff is proceeding *pro se*, she states that she is "a duly licensed attorney" in her complaint. (Compl., DE # 1, ¶ 134.) She signed her complaint as "Kamelia 'Mia' Shaw, Esq." (id. at 44, 45) and also identified herself as "Kamelia Shaw, Esq." on the summonses issued to all of the defendants in this action (DE # 5). Moreover, as part of her defamation claim, plaintiff alleges that her "professional reputation" has been harmed by the actions of defendants. (Compl., DE # 1, ¶ 140.) Because plaintiff represents that she is an attorney, the court concludes that there is no reason to afford her the latitude ordinarily accorded

8

to the typical *pro se* plaintiff.

In this case, Omega's attorney, Lori Jones ("Jones"), sent a letter to plaintiff on 29 March 2013, approximately three and a half months after plaintiff filed the instant complaint. The letter states in pertinent part:

> The purpose of this letter is to request that you immediately dismiss Omega from this suit. Based on my review of the Complaint and the special proceedings file, the claims you have set forth against Omega appear to be frivolous and not warranted by any law or fact and constitute a violation of Rule 11 of the Federal Rules of Civil Procedure. The entirety of your Complaint arises from a foreclosure by the Parkway Unit Owners Association on a residence owned by you due to an alleged failure to pay homeowners assessments. The Claim of Lien filed against your property was filed by Parkway Unit Owners Association, Inc. ("PUOA"), and all foreclosure proceedings were by PUOA. Omega is not affiliated in any way with PUOA, and was not involved with the foreclosure.
>
> The only specific factual allegations you raise against Omega are that (1) Omega is a home owners association for MacArthur Park Subdivision and (2) that Omega acted as an "alter ego" for the Parkway Unit Owners Association. Both of these factual assertions are without merit, of which you should be aware given your involvement in the lengthy state court proceedings. The idea that Omega is a homeowners association is patently false, and at no point was Omega involved in the foreclosure on your residence or even mentioned in the state level proceedings. Omega is not the property manager for PUOA and is not involved with the collection of assessments by that association. In short, there would appear to be a distinct lack of evidentiary support for your allegations against Omega.

(Mot. Sanctions, Ex. A, DE # 50-1, at 2.)[2] Plaintiff did not respond to the letter until almost six months later. Prior to receiving plaintiff's response, Omega filed a motion to dismiss and a supporting memorandum of law on 5 April 2013. (DE ## 20, 21.) On 27 September 2013, plaintiff sent an email to Jones, which provides in pertinent part:

> I am in receipt of your letter requesting I withdraw my federal complaint in regards to your client, Omega Association Management.

---

[2] Page citations are to the numbers generated by CM/ECF.

> . . .
>
> To that end, I am also in receipt of information which causes me to believe that your client may not be involved in the cause of actions I've alleged.
>
> Therefore, I fully intend to withdraw and hold harmless your client. I will make my best efforts to do so within the next two (2) weeks.

(Mot. Sanctions, Ex. B, DE # 50-2, at 4.) As Omega has pointed out, "no discovery has been exchanged in this matter to date. Any information Plaintiff therefore received would have been information available to her prior to the filing of the Complaint." (Id., DE # 50, ¶ 13.)

Jones immediately responded to plaintiff's email on 27 September 2013 and noted that based on the court's 24 September 2013 ruling on Omega's first motion to dismiss, Omega's answer to plaintiff's complaint was due less than two weeks later, on 8 October 2013. (Id., Ex. B, DE # 50-2, at 3.) Jones requested that plaintiff consent to a two-week extension of time for Omega to file its answer in order to allow plaintiff sufficient time to file a stipulation of dismissal as to Omega. (Id.) Jones specifically noted that if plaintiff did not consent to an extension of time and Omega was forced to file its answer, Omega would move to dismiss the remaining defamation claim and would also move forward with a motion for attorney's fees. (Id.)

Several days later, on 3 October 2013, Jones again emailed plaintiff to inquire whether a dismissal had been filed as to Omega or whether plaintiff would consent to an extension of time for Omega to answer. (Id. at 2.) Plaintiff responded to the email the same day, stating in pertinent part: "I will withdraw as pertains to your client, Omega. I plan to draft and file all pertinent docs early next week." (Id.) However, plaintiff did not file a stipulation of dismissal as to Omega, nor did she consent to an extension of time for Omega to file a response to the

10

complaint. (L. Jones Aff., DE # 49-1, ¶¶ 17, 20.) On 8 October 2013, Omega filed its answer to the complaint, a motion to dismiss plaintiff's defamation claim pursuant to Federal Rule of Civil Procedure 12(b)(6), and a supporting memorandum. (DE ## 37, 38.)

On 24 October 2013, Jones served plaintiff with a copy of the instant motion for sanctions. (L. Jones Aff., DE # 49-1, ¶ 19; Mot. Sanctions, Ex. C, DE # 50-3, at 2.) Jones stated that the motion would be filed with the court in twenty-one days unless plaintiff dismissed Omega from the action. (Mot. Sanctions, Ex. C, DE # 50-3, at 2.) Plaintiff failed to file a dismissal, and Omega subsequently filed a motion for summary judgment and the motion for sanctions on 5 February 2014. (DE ## 46, 50.) Plaintiff did not file a response to either motion. The court finds that Omega's motion for sanctions has complied with the procedural safeguards of Rule 11. See Fed. R. Civ. P. 11(c)(2).

The court further finds plaintiff's conduct to be sanctionable under Rule 11 because her factual contentions against Omega are without evidentiary support. In this case, Omega maintains that it was not involved in any way in the foreclosure proceedings on plaintiff's property. (M. Smith Aff., DE # 47-2, ¶¶ 5-11; Mot. Sanctions, DE # 50, ¶¶ 5-9; id., Ex. A, DE # 50-1, at 2.) Because the instant lawsuit is based upon the actions taken in the state court foreclosure proceedings, plaintiff knew or should have known that Omega was not a party to those proceedings at the time her federal complaint was filed. (See, e.g., Mot. Sanctions, DE # 50, ¶¶ 13, 19, 22.) In addition, plaintiff herself has acknowledged Omega's lack of involvement in this action. (Id., Ex. B, DE # 50-2, at 2, 4.) On two separate occasions, she represented that she would "withdraw" her complaint as to Omega, but she did not follow through on those assurances. (Id.) Moreover, when faced with the instant motion for sanctions against her,

11

plaintiff failed to dismiss Omega from this action and also failed to file an opposition to the motion. Her behavior demonstrates a willful choice to essentially ignore this matter. While the court does not take the imposition of sanctions lightly, it cannot overlook plaintiff's failure to provide an explanation for her actions. The court concludes that plaintiff's initiation of a lawsuit against Omega and her refusal to dismiss Omega from the action were not justified, as measured by an objective standard of reasonableness. As a result, sanctions are appropriate in this case.

Rule 11 allows payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation. Fed. R. Civ. P. 11(c)(4). A sanction imposed under Rule 11 "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Id. Because plaintiff's violation of Rule 11 occurred in the very filing of her complaint against Omega, the reasonable fees directly resulting from her violation include all reasonable attorney's fees that Omega has incurred in this case. Omega's counsel has provided an itemized statement and a detailed affidavit in support of Omega's request for attorney's fees. (L. Jones Aff. & Ex. A, DE # 49-1.) The court has reviewed this documentation and finds that the amount requested is reasonable.[3] Accordingly, the court will award Omega attorney's fees in the amount of $7,310.00.

### III. CONCLUSION

For the foregoing reasons, Omega's motion to dismiss (DE # 37) is GRANTED, and its motion for summary judgment (DE # 46) is DENIED AS MOOT. Omega's motion for sanctions (DE # 50) is GRANTED, and it is ORDERED that Omega shall recover from plaintiff $7,310.00

---

[3] The court notes that Omega filed its motion for summary judgment on 5 February 2014. (DE # 46.) Although Omega's motion to dismiss was still pending at that time, the court finds that Omega's decision to file the motion for summary judgment was reasonable because the deadline for filing dispositive motions in this case was 6 February 2014. (DE # 33.)

in attorney's fees.  Omega is hereby DISMISSED from this action.  Furthermore, it is

ORDERED that the defendants remaining in this action shall have thirty days from the date of

this order to file a dispositive motion.  Because this deadline falls within the period that a pre-

trial conference would normally be held, the trial date in this matter is hereby CONTINUED to 2

September 2014.

       This 15 April 2014.

                                     W. Earl Britt
                                     Senior U.S. District Judge